# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MISTI MCBRIDE,<br><br>　　　　Plaintiff,<br><br>AGXPLORE, Tim Gutwein, Jon Hagler, and Gunther Kreps<br><br>　　　　Defendants. | Case No.<br><br>**Trial by jury demanded.** |

## COMPLAINT

Plaintiff, MISTI MCBRIDE, by and through her attorneys pleads the following Complaint at Law against Defendants, AGXPLORE, Timothy Gutwein, Jon Hagler and Gunther Kreps. In so doing, she states as follows:

### Introduction

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII") and Missouri common law.

### Jurisdiction & Venue

2. Jurisdiction is conferred on this Court by the above-named statutes, as well as by 28 U.S.C. § 1331 and § 1367. Venue of this action properly lies in the Eastern District of Missouri, pursuant to 28 U.S.C. § 1391(b) and (c).

3. Plaintiff timely filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging continuing Title VII violations on April 20, 2020. Plaintiff received her Notice of Right to Sue from the EEOC on December 17, 2020.

4. Venue is proper in the District pursuant to 28 U.S.C § 1391(b)(2), because the conduct complained of herein occurred in Parma, Missouri which is in the Eastern District of Missouri.

## Factual Allegations

5. Misti McBride ("Plaintiff") is a citizen of the United States, and a resident of Dexter, Stoddard County, Missouri. At all relevant times, Plaintiff worked for AgXplore and was an employee as defined by the aforementioned statutes.

6. AgXplore ("Defendant") is a Missouri corporation registered and doing business in Parma, Missouri. At all relevant times, Defendant had more than fifteen employees.

7. Defendant Tim Gutwein is a citizen of the United States and a resident of Cape Girardeau, Cape Girardeau County, Missouri.

8. Defendant Jon Hagler is a citizen of the United States and a resident of Strafford, Greene County, Missouri.

9. Defendant Gunther Kreps is a citizen of the United States and a resident of Rossville, Indiana.

10. Plaintiff began working for Defendant in August of 2011 as Director of Marketing reporting to Barry Aycock and Defendant Tim Gutwein, who was the Executive Vice President at the time. As Director of Marketing, Plaintiff was responsible for marketing but as time went on, she also assumed responsibility for sales, supervising a large part of the company's sales staff.

11. Plaintiff consistently met and/or exceeded expectations as Director of Marketing.

12. During all relevant times, Plaintiff was the only female in a leadership position in the company.

13. In the last calendar quarter of 2018, AgXplore's owner, Barry Aycock, decided to sell the company to Defendant Gutwein.

**Defendant's workplace becomes riddled with gender-based discrimination and hostility.**

14. When Mr. Aycock decided to sell to Mr. Gutwein, Mr. Gutwein took over day-to-day decision-making. From then until Plaintiff's termination the workplace became hostile for Plaintiff and other women.

15. For instance, in or around September of 2018, Mr. Gutwein hired Gunther Kreps as National Sales Manager and gave him most of Plaintiff's former sales responsibilities. Defendant Kreps had been asked to leave his former job in part because of inappropriate conduct, some of which was directed at women.

16. In or around October or November 2018, Mr. Gutwein demoted Plaintiff from her Director of Marketing position and into a sales role handling only Mr. Aycock's House Accounts. In this new role, Plaintiff no longer had a team or any managerial responsibilities. Additionally, Defendant paid Defendant Kreps far more than Plaintiff for doing the same work Plaintiff had done.

17. Then, in or around October 2018, Defendant Gutwein hired Defendant Jon Hagler as its Chief Operating Officer. Defendant Hagler had previously served as Missouri's Director of the Department of Agriculture but had resigned after several women accused him of creating a hostile working environment. Defendant Gutwein knew this yet hired Defendant Hagler anyway.

**Defendant Kreps sexually harasses Plaintiff**

18. During all these changes, on November 7th and 8th of 2018, Shane VanFleet, National Technical Lead, and Plaintiff took Defendant Kreps to visit one of the company's

clients.  Following a business dinner, Defendant Kreps, Mr. VanFleet and Plaintiff returned to their hotel.  Defendant Kreps was extremely intoxicated and told Plaintiff that he needed to speak with her privately about "her future with the company."  He asked her to come to his room to talk.  Plaintiff asked if they could instead talk in the lobby, but Defendant Kreps insisted they needed privacy. Plaintiff felt that she had no choice because Defendant Kreps was now her manager, so she went with him to his room.  Once inside his room, Defendant. Kreps complimented Plaintiff on all she had done for the company and told her he needed her on his team. Defendant Kreps then asked what kind of "panties" she was wearing, and if he could touch her. Plaintiff was offended and frightened and left the room immediately.

19. On or around December 6, 2018, after wrestling with what to do, Plaintiff told Mr. Aycock there had been an incident with Defendant Kreps and that he should not be alone with women.

20. A few days later, Defendant Hagler contacted Plaintiff and asked her to disclose the entire story to him.  Plaintiff was understandably hesitant to do so but Defendant Hagler angrily threatened to terminate her if she did not.

21. On December 27, 2018, Plaintiff met with Defendant Hagler and Defendant Gutwein and shared her story.  Defendant Hagler left the room at the end of the meeting after which Defendant Gutwein asked Plaintiff if she "just wanted to be paid off." Plaintiff said she did not want a "payoff" and that she just wanted to do the right thing by reporting the incident. Defendant Gutwein said that the company would investigate.

22. From the time she reported the harassment until her termination, rather than investigating her complaint and remedying the harassment, Defendants, instead, created a hostile working environment for Plaintiff.

23. Initially, Defendant Hagler planned to hire an outside professional to investigate Plaintiff's complaints. However, Defendant Kreps said that he would resign if the company did that, so Defendant Hagler relented and attempted to investigate the matter himself despite having no human resources training or experience.

24. This investigation was prolonged and delayed well into early 2019. During this time, Defendant Kreps changed his story about what happened several times, prompting Defendant Hagler to tell Defendant Gutwein and Mr. Aycock that Defendant Kreps would not make a good witness. Defendant Gutwein then took over the investigation and excluded Mr. Aycock.

25. After taking over, Defendant Gutwein told Defendant Kreps that it was a problem that his stories kept changing and then told him he needed to "get his stories straight." Eventually, Defendant Kreps admitted that he could not remember what happened the night he sexually harassed Plaintiff. After that, Defendant Gutwein stopped the investigation without making any findings or taking any remedial measures. The company did make Defendant Hagler Plaintiff's supervisor but that further impeded Plaintiff's ability to do her job because rather than reporting to the National Sales Director (as all other salespeople were) she was now reporting to the Chief Operating Officer.

**Defendant continues its pattern of hostility and retaliates against Plaintiff**

26. Following the change in reporting structure, Defendant Gutwein and Defendant Hagler made Plaintiff's working environment extremely uncomfortable with the goal of forcing her to resign. For instance, Defendants Gutwein and Hagler told several employees, including but not limited to Mr. VanFleet and Megan DeLisle, not to talk to Plaintiff. Additionally, Defendants Gutwein, Kreps and Hagler excluded Plaintiff from sales team and leadership

communications and meetings and told her to call before she came to the home office to make sure Defendant Gutwein was not there.

27. In addition to instructing several employees not to talk to Plaintiff, Defendants Hagler and Gutwein also bad-mouthed and disparaged Plaintiff to her co-workers, saying that she was difficult, mean and that she would not work with them or help them. None of that was true and, prior to reporting the sexual harassment, no one ever accused Plaintiff of this. These statements had the effect of further isolating Plaintiff from her colleagues and ensuring she was a persona non grata within the company.

28. Additionally, Defendants refused to provide Plaintiff with information as to sales expectations, pay, commissions or accounts. Plaintiff asked several times but never received any information. This made it impossible for Plaintiff to do the new job which Defendant forced her into.

29. Despite not having any information about compensation in her new role, Plaintiff did know all the other salespeople received double commission for new accounts. Despite that, Defendant Hagler refused to pay Plaintiff double commissions when she secured new business. When she pressed the issue, Defendant Hagler refused to tell her why. This disparate pay contributed to the hostile working environment and continued throughout 2019 and up until her termination.

30. Additionally, in 2019, the company redesigned its website and refused to put Plaintiff on it. She was the only member of the team excluded and customers often questioned her why she was not on there. Again, this was designed to undermine her professional efforts.

31. Then, in or around July of 2019, Defendant Gutwein promoted Defendant Kreps to Chief Products and Technology Officer, even though just seven months earlier Plaintiff had

reported Mr. Kreps' sexual harassment of her. This gave Defendant Kreps even more power within the company, a fact which intimidated Plaintiff.

32. The intimidating, isolation and disparage pay all continued throughout 2019.

33. Then, on or around December 19, 2019, Defendant distributed its first ever employee handbook and asked employees to sign it.

34. Upon reviewing the handbook, Plaintiff noticed that it asked employees to acknowledge that the company followed a sexual harassment policy.

35. Plaintiff told Defendant's new Human Resources representative, Sherry Bingham, that she was not comfortable signing the handbook because as far as she knew there was still an open investigation regarding her sexual harassment claim. Plaintiff also told Ms. Bingham that she did not believe Defendant abided by its sexual harassment policy as was evidenced by how it handled her claim and the hostile environment and treatment she had endured since then. Plaintiff then told Ms. Bingham how the company had failed to adequately investigate or remedy the sexual harassment and how it had retaliated against her after she complained about it.

36. After Plaintiff shared these concerns with Ms. Bingham, Ms. Bingham told Plaintiff that she had talked to Defendant Hagler about his investigation and that she would place a "formal write up" in Mr. Kreps' file. This was more than one year after the incident.

37. Then, on December 26, 2019, Mr. Bingham told Plaintiff that the company had again decided to switch her reporting structure and this time they put her under a brand-new regional manager named Dennis Riley. After that, Ms. Bingham told Plaintiff that the company considered her "case closed."

38. Prior to serving in the human resources role for Defendant, Ms. Bingham had no human resources training or experience.

39. On January 3, 2020, Plaintiff's new manager, Mr. Riley, told Plaintiff that Ms. Bingham had told him that if Plaintiff did not sign the handbook that she would be placed on unpaid leave. Plaintiff told Mr. Riley about her complaint of harassment and how the company had failed to do anything about it and how Defendants had retaliated against her. Mr. Riley seemed sympathetic but indicated there was nothing he could do.

40. Plaintiff continued to refuse to sign the handbook and on January 16, 2020 Ms. Bingham emailed Plaintiff and told her Defendant had "accepted her resignation." However, Plaintiff had not resigned. Defendant terminated her.

41. Other employees refused to sign the handbook but were not similarly terminated.

42. After her termination, on or around June 9, 2020, Plaintiff learned from Megan DeLisle, one of her former coworkers, that Mr. Gutwein, Mr. Hagler and Mr. Kreps had told her and other employees that Plaintiff had lied about her sexual harassment claim because she was upset that she did not receive the National Sales Manager job.

44. These statements are provably false. Plaintiff did not lie when she reported that Defendant Kreps sexually harassed her. However, many people within Plaintiff's professional circles believed and/or still believe she did.

## COUNT I - HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

44. Plaintiff incorporates paragraphs 1-43 as though set forth herein.

45. From November 2018 when Defendant Kreps sexually harassed her until her termination on January 16, 2020, Plaintiff was subjected to a continuing and ongoing hostile working environment based upon her gender and her claim of sexual harassment. This hostility

included but was not limited to: 1) her supervisor forcing her to come to his hotel room, talking about her being "on his team" and then asking to "touch her," 2) repeated refusals to investigate and/or remedy supervisor sexual harassment; 3) demotions and interference with Plaintiff's ability to do her job; 4) repeated and continued isolation from co-workers and exclusions from meetings and communications; 5) ongoing disparate pay as compared to male counterparts and those who had not objected to sexual harassment; 6) being blackballed and defamed to co-workers and within Plaintiff's small community.  In addition, Defendants also subjected Plaintiff to a repeated pattern of belittling and threatening behavior after she reported the harassment. These actions were designed to force Plaintiff to quit her job.

46. Eventually, this hostile work environment culminated in Plaintiff's termination on January 16, 2020, after Plaintiff questioned why, after a year, her sexual harassment complaint had never been investigated and/or remedied and while the aggressor was, instead, promoted to a Chief-level position.

47. This hostile work environment interfered with Plaintiff's ability to do her job and caused her financial loss and extreme emotional distress.

WHEREFORE, Plaintiff respectfully requests that this Court award her lost wages and benefits stemming from the hostile work environment, compensatory and punitive damages in an amount to be determined at trial and attorneys' fees and costs incurred in bringing this action.

## COUNT II-RETALIATION IN VIOLATION OF TITLE VII

48. Plaintiff incorporates paragraphs 1-43 as though set forth herein.

49. Plaintiff engaged in protected conduct in December 2019 and January 2020 when she complained to Defendant's Human Resources officer that her complaint of sexual harassment had been pending for more than a year and had never been investigated or resolved.

50. Defendant retaliated against Plaintiff for engaging in protected conduct when it terminated her.

51. As a result, Plaintiff suffered lost wages and benefits and emotional distress.

WHEREFORE, Plaintiff respectfully requests that this Court award her lost wages and benefits stemming for her termination, compensatory and punitive damages in an amount to be determined at trial and attorneys' fees and costs incurred in bringing this Action.

## COUNT III-DEFAMATION AGAISNT ALL DEFENDANTS

52. Plaintiff incorporates paragraphs 1 – 43 as set forth herein.

53. After Plaintiff reported Defendants Gutwein, Hagler and Kreps all repeatedly told people within the company that Plaintiff lied about her sexual harassment claim because she was angry that she did not receive the national sales manager position.

54. Defendants knew or should have known this was false.

55. These three Defendants were all officers and agents of AgXplore.  As a result, AgXplore is vicariously liable for these actions.

56. The Defendants' statements caused Plaintiff actual and provable harm to her personal and professional reputation in that her co-workers believed and/or still believe that she lied about sexual harassment.

WHEREFORE, Plaintiff respectfully requests that this Court award her all damages stemming from Defendants' defamatory statements about her.

## **JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues herein.

                                                Respectfully Submitted,

                                                /s/ Jessica M. Scales
                                                One of Plaintiff's Attorneys

Jessica M. Scales
Sedey Harper Westhoff, P.C.
2711 Clifton Ave., St. Louis, MO 63139
jscales@sedeyharper.com

Kristin M. Case
Case + Sedey, LLC
250 S. Wacker Drive, Suite 230
Chicago IL 60606
kcase@caseandsedey.com
\*\*application for pro hac vice admission pending