UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| **MISTI MCBRIDE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 1:21cv41 SNLJ |
| | ) | |
| **AGXPLORE INT'L, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM and ORDER

Plaintiff Misti McBride filed a complaint for employment discrimination against her former employer, defendant AgXplore International, LLC for violation of Title VII related to assertions of sexual harassment and retaliation for reporting sexual harassment. She also brought a state law claim for defamation against AgXplore and individual defendants Tim Gutwein, Jon Hagler, and Gunther Kreps.

The defendants have moved to dismiss plaintiff's defamation claim because they say it is preempted by the Missouri Human Rights Act and because, even if it were not preempted, she cannot prove publication.

### I.    Factual Background

Plaintiff alleges that she was employed by AgXplore when AgXplore hired defendant Kreps as its new National Sales Manager. Kreps became plaintiff's boss. Two months after Kreps was hired, plaintiff and Kreps traveled together to meet a customer. Plaintiff alleges Kreps became intoxicated and later propositioned her in his hotel room.

She told defendant Hagler, Chief Operating Officer, and defendant Gutwein, Chief Executive Officer, about what had happened. She alleges the defendants failed to investigate her complaint and then fired plaintiff on January 16, 2019. Later, plaintiff alleges she learned that the three individual defendants had told other employers that plaintiff had made up the sexual harassment allegations because she was angry that defendant Kreps had been hired for the National Sales Director position.

## II.   Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content. . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.

### III.   Discussion

Defendants argue that preemption and a failure to plead the "publication" element properly require dismissal of plaintiff's defamation claim.

#### A.   Preemption

The Missouri Human Rights Act ("MHRA"), which is the Missouri analog to the federal Title VII statutory scheme invoked in plaintiff's Counts I and II, provides the "exclusive remedy for any and all claims for injury or damages arising out of an <u>employment relationship</u>. § 213.070.2 RSMo. (emphasis added).  Thus, courts have held that claims alleging wrongful discharge or, for example, negligence in an employer's failure to hire, train, and supervise its employees, are preempted by the MHRA.  *See, e.g.*, *State ex rel. Church & Dwight Co. v. Collins*, 543 S.W.3d 22, 28 (Mo. *banc* 2018). Notably, claims under the MHRA may only be brought against an employer, which, under the statute, does not include individuals.  § 213.010 RSMo. ("'Employer' shall not include:…(c) An individual employed by an employer.").   The question posed by this case is whether plaintiff's defamation claim necessarily arises out of the employment relationship such that it is preempted by the MHRA.  Although no caselaw is directly on point, this Court has recently observed that there exists "no Missouri case holding tort claims against a co-employee for personal injuries are preempted by the MHRA." *T.F. v. BB St. Louis, LLC*, 4:20-CV-1526 RLW, 2021 WL 494795, at *4 (E.D. Mo. Feb. 10, 2021).

The Western District, however, has declined to find that the MHRA preempted an assault and battery state-law claim against a co-worker.  *Matthews v. Syncreon.us, Inc.*,

3

20-CV-6140-SRB, 2020 WL 6538332, at *4 (W.D. Mo. Nov. 6, 2020).  There, 18 plaintiffs sued their employers for violations of the MHRA, and one of those plaintiffs also brought an assault and battery claim against a coworker.  The alleged assault and battery occurred while the two co-employees were at work.  The court held, in the context of a fraudulent joinder analysis on a motion to remand, that "a state court might find that the MHRA only preempts common law torts which are specific to an employee-employer relationship."  *Id.*

In *T.F.*, this Court observed that since the MHRA was amended in 2017 to include the preemption language in § 213.070.2 RSMo, "the issue of preemption has arisen infrequently, and neither side has cited to a Missouri case holding the MHRA preempts common law claims for personal injuries against co-employees, and the Court has found none."  2021 WL 494795, at *4.  The Court noted that,

> In a case where the new language of the statute did not apply, the Missouri Supreme Court ruled that the MHRA preempts common law claims against an employer, for example, negligent failure to train or wrongful discharge, but the Missouri Supreme Court did not hold that the statute preempts tort claims against a co-employee. *State ex rel. Church & Dwight Co. v. Collins*, 543 S.W.3d 22, 28 (Mo. *banc* 2018) (holding claims for claims for negligence in employer's failure to hire, train, and supervise its employees, as well as wrongful discharge, are preempted by the MHRA).

*Id.* (emphasis added).

Defendants contend that plaintiff's defamation claim cannot proceed on its own because it is based on her claims of hostile work environment and retaliation.  In Count I, plaintiff explicitly alleges and seeks damages for the alleged hostile work environment that she allegedly experienced being "defamed to co-workers."  [#1 at ¶ 45.]  Plaintiff

includes in her list of "hostilities" her "being blackballed and defamed to co-workers and within plaintiff's small community." [*Id.*]  In Count III, for defamation, plaintiff alleges damages only "in that her co-workers believed and/or still believe that she lied about sexual harassment." [#1 at ¶ 56.]  Defendants argue that the defamation allegations, then, necessarily arise out of plaintiff's employment relationship.  In addition, in order to obtain this Court's 28 U.S.C. § 1367 supplemental jurisdiction over her state-law defamation claim, as plaintiff apparently claims, plaintiff must have premised the count on the "same set of operative facts" as Counts I and II.

   Plaintiff argues that, in fact, her defamation claim arises from what was said about plaintiff <u>after</u> the alleged sexual propositions and the company's subsequent retaliatory termination.  Plaintiff apparently ignores her statements regarding the defamatory conduct's contribution to her hostile work environment claim, which is clearly stated in her Count I as described above.  Although plaintiff skirts the issue, this Court determines that the defamatory conduct that occurred during her employment is attributable to her claims of hostile work environment and retaliation in Counts I and II, but that any defamatory conduct that occurred <u>after</u> her employment terminated could stand on its own in Count III.   That is, post-employment defamation is a common-law tort not "specific to the employee-employer relationship." *Matthews*, 2020 WL 6538332 at *4.  Such a characterization also makes it easy to see why such a standalone defamation count can pertain to the "same set of operative facts" required for supplemental jurisdiction even though the post-employment defamation claim is not preempted by the MHRA.

5

Finally, defendant points out that because plaintiff alleges that "AgXplore is vicariously liable" for the individual defendants' actions, [#1 at ¶ 55], and because such vicarious liability is available only where the "employee's acts were done within the scope of his employment duties," *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 765 (Mo. *banc* 2006), that the alleged defamation is inextricably intertwined with plaintiff's employment relationship.  That position is problematic. The individual defendants might have been acting within the scope of their employment duties while plaintiff herself was no longer employed by the same employer, and thus the cause of action does not necessarily arise from plaintiff's employment relationship.

Ultimately, plaintiff can not recover against the individuals at all under the MHRA for the defamation claim.  However, plaintiff purportedly brings the defamation claim against individuals and their employer (via vicarious liability) separately from her employment-specific claims, and the parties cite no case law to support preemption.

All that said, plaintiff does not limit her Count III to conduct occurring after her employment ended.  Count III is altogether silent with respect to when the relevant conduct occurred.  As a result, this Court will dismiss Count III with leave to amend within 30 days in accordance with this memorandum.

### B. Publication

Next, defendants argue that plaintiff cannot prove an essential element of her defamation claim, publication, because the alleged statements were not publications and are protected by intra-corporate immunity.

6

To prove defamation, a plaintiff must show: " 1) publication, 2) of a defamatory statement, 3) that identifies the Plaintiff, 4) that is false, 5) that is published with the requisite degree of fault and 6) damages to Plaintiff's reputation." *Farrow v. St. Francis Med. Ctr.*, 407 S.W.3d 579, 598-99 (Mo. *banc* 2013).

"A publication is simply the communication of defamatory matter to a third person." *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 313 (Mo. *banc* 1993). "However, 'communications between officers of the same corporation in the due and regular course of the corporate business, or between different offices of the same corporation, are not publications to third persons.'" *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. *banc* 1996) (quoting *Hellesen v. Knaus Truck Lines*, 370 S.W.2d 341, 344 (Mo. 1963)). On the other hand, "[d]efamatory statements made by company officers or supervisors to non-supervisory employees constitute a publication for purposes of a defamation action." *Rice*, 919 S.W.2d at 243. Here, plaintiff alleges that the defamatory statements were made to one of plaintiff's former coworkers "and other employees." [#1 at ¶ 42.] Plaintiff does not allege that "former coworker…and other employees" were non-supervisory in her complaint, although she says that they were non-supervisory in her response memorandum.

Because plaintiff's allegations that the statements were made to non-supervisory employees are not in the complaint, plaintiff has not properly alleged publication. The Court will grant the motion to dismiss without prejudice to plaintiff's filing an amended complaint.

7

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [#8] is GRANTED in part and DENIED in part;

**IT IS FURTHER ORDERED** that plaintiff's Count II is DISMISSED without prejudice to plaintiff's filing an amended complaint in accordance with this memorandum and order no later than November 15, 2021.

Dated this  15th  day of October, 2021.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE